NO. 8441

COURT OF APPEAL

PARISH OF ORLEANS

-----

TROY WAGON WORKS COMPANY

versus

HAMPTON REYNOLDS.

-----

8441

Dinkelspiel; J.

Plaintiff alleges that under a contract had with the defendant for the purchases of four reversible wagons, at the price and sum of $325.00 each, making a total amount claimed of $1300.00.

Defendant admits that he gave an order to one N. J. Dowd, who was the agent of plaintiff company, and agreed and contracted to deliver to defendant, these trailers with roller bearing axels; when the trailers arrived in Franklin, Louisiana, where they were to be used, it was ascertained for the first time that they were not the type as ordered and notification was made to the agent of that fact, and the further statement made that the contract had been violated and it was necessary to haul the gravel in the character of trailers ordered by him in building a road. And on these issues, whether or not the agent of plaintiff company had or not promised to deliver to defendant, spindle axles but roller bearing axles as ordered. It is contended by defendant further that the agent admitted that the goods in question were not as ordered and were not that type; it was further agreed between the parties, that is the agent and the defendant, that the goods in question were to be used temporarily until the proper order as given was complied with. It is shown that Dowd was a competitor emongst other agents in trying to dispose of to defendant, who had a large contract in St. Mary Parish, for the building of fifty miles of gravel road, and which contract had to be completed with eight months, the trailers in question, and succeeded in so doing by his representations as to the chracter required. He, Dowd was fully aware of the contract in question, and knowing this had sold to the defendant, the goods required; when the goods arrived at Franklin, they came f. o. b. and as they could not be delivered without the payment of freight, which defendant claimed they did not owe, but had bought at the price stated including

46.

freight, but were compelled to pay $225.25, in order to get delivery of the goods in question.

For the purposes of this case, Dowd was the unqualified agent of plaintiff, he had sold the trailers which could be used by the defendant, necessarily equipped with roller bearing axels, Dowd agreed and sold this particular trailers and knowing that it was the only kind of vehicle that could be used in building the road, and doing the work properly, he was so informed, and he advised defendant that he gave orders to this effect to the plaintiff; whether he did or did not, was a matter entirely immaterial to the defendant. Defendant had a right to rely on this agent's statement, because for all purposes in this case he was not only the sales agent but he was the only party with whom defendant had the slightest knowledge of, and the only party that defendant could deal with.

The Judge of the lower Court in rendering judgment in favor of the defendant in an able written opinion gave written reasons for both for dismissing of plaintiff's suit and also the dismissal of the reconventional demand made by the defendant which reasons we herewith embody and adopt as our own.

"The eivdence shows me, that the defendant, Hampton Reynolds, a contractor in this city, had a very large contract in St. Mary Parish for the building of fifty miles of gravel road, which had to be completed in eight months. That this obligation rendered it necessary for Mr. Reynolds to procure hauling apparatus to move the gravel with which he was to build the road, and that what he needed was trailers, that he could use with trucks going at a comparatively high rate of speed—six miles and over per hour, and it is in eivdence that trucks with spindle axles are not fitted for hauling at a rate of speed exceeding four miles per hour—but the proper rate for trailers of that type is about four miles per hour. It is shown that Mr. Reynolds was in the market for these trailers, and all of the persons having

them for sale undertook to get the order.   Among them being Mr. N. J. Dowd, representing himself to be the agent of the plaintiff.   There is no doubt in my mind, from the evidence here, that he was the agent of the plaintiff, and that he had authority to contract for the sale of these trailers, and consequently he had authority to make representations concerning same.   There is no shadow of doubt left in my mind that one of the essential requirements of Mr. Reynolds in purchasing these trailers was that they should be roller bearing, in order that he might use them with fast trucks, going at six miles an hour or more.

This man, Dowd, for the purpose of the sale, was the gent of the plaintiff, and made representations that the trailers he proposed to sell were roller bearing.   There is no doubt in my mind about that, and he stated that it was the Hyatt system of roller bearings with which they were equipped.   Previous to making that statement he had taken it up to ascertain that fact. This was an absolute misrepresentation to Mr. Reynolds.   When the trailers arrived in Franklin, where they were needed imperatively; after they were taken from the railroad company, the foreman discovered that they were not roller bearing, but plain spindle axles, and Mr. Reynolds, through his engineer, Mr. Garsaud, immediately got in contact with Mr. Dowd, who, for the purposes of this transaction and everything connected with it, was the agent of the plaintiff, informing him of the fact that the trailers were plain spindle and not roller bearing axles, and that the exigencies of the case xhxx were such that he proposed as a method of minimizing the damages that the trailers be used temporarily until they could be replaced with roller bearing axles.

Dowd agreed to that.   This fact was made known to plaintiff, and the plaintiff did not do anything so far as the correspondence shows, except to argue that he was mistaken in thinking that he needed roller bearing axles, and that the

■

48

spindle trailers would answer as well.    The trailers were used under this agreement or understanding had with the agent of the plaintiff, who,for all purposes of this sale, was the agent, because agency to do a certain things carries with it the incidental power to do everything necessary, proper or right in the premises, and this sale having been made under a false representation, the agent down here with whom Mr. Reynolds had contracted, who had made the sale and knew the use of the property, could go into another and subsequent arrangement or contract by which the damages would be minimized.    They were sold on absolute misrepresentation. Reynolds owes nothing for them.

As to the reconventional demand the evidence shows that Dowd informed Reynolds that he could not sell the goods f. o. b. Franklin, that the freight would have to be paid from the point of origin, Troy, Ohio, to Franklin, by Reynolds, and that he, Dowd, bound himself, by separate agreement between himself and Reynolds, that he, the agent, Dowd, would pay that.    Under the circumstances the freight having been paid, and use having been of the trailers under that agreement, I don't think that Reynolds should recover anything.

There will be judgment dismissing the plaintiff's demand and dismissing the defendant's reconventional demand."

It has been held that the agent who in a case of this chracter deals directly with the other contracting party, the principal is bound for his acts.

"The responsibility of the principal to third persons is not confined to parties where the contract has been made upon his express or implied authority.    It extends further and binds the principal in all cases where the agent is acting within the scope of his usual employment or has held out to the public or to the other party as having complete authority, although in fact he has in the particular instance exceeded or violated his instructions, and acted without authority. "

Story on Agencies, 9th Addition, p. 505, Sec. 443.

49

"Whatever an agent does within the scope of his authority is in legal effect the act of his principal and is entitled to its advantages, and is also subject to its liabilities."

Liquidation of Prudential Savings & Homestead Society vs. Richard J. Gondolf, No. 7696 Ct. of Appeal.

"The principal is bound by all the acts of his agent within the scope of his authority, which he held it out to the world he possessed."

Henderson vs. Railroad, 11 Ct. of Appeal 43.

For the reasons assigned, it is ordered, adjudged and decreed, that the judgment of the Court a quo be and the same is hereby affirmed, costs of both Courts to be paid by plaintiff.

-Judgment affirmed-